KLEES, Judge.
On August 15,1986, the defendant Sarah Berry was charged by bill of information with attempted theft of ONE MILLION and NO/lOO DOLLARS ($1,000,000.00) from the legal heirs of Elizabeth Hart. On September 15, 1986, she was arraigned and pled not guilty. On January 20, 1987, trial began before a six member jury. The defendant filed a motion to quash, which was denied. The jury found the defendant guilty as charged the next day. On September 18, 1987 the defendant filed motions to quash, in arrest of judgment and for a new trial, which were denied by the trial court. On November 20, 1987, the defendant was sentenced to one year in parish prison, suspended, and two years active probation with the special condition of paying a fine of TWO HUNDRED FIFTY and NO/100 DOLLARS ($250.00) to the Criminal Court Operation Fund and ONE HUNDRED TWELVE and 50/100 DOLLARS ($112.50) court costs, or serve thirty (30) days in default of payment. The court further ordered the defendant to serve fifty (50) weekends of community service. This appeal followed.
FACTS:
In early December, 1985, nineteen-year-old Sarah Berry met Elizabeth Hart, an elderly widow who lived in New Orleans. Hart had no living relatives, and had executed a will in 1982 leaving her estate to various legatees, including some of her neighbors, who had been assisting in the handling of her affairs for quite some time.
Berry sold Hart a satellite dish from a company owned by Berry’s father, Amber-son Home Improvements. According to their testimony at trial, several of Hart’s neighbors became suspicious after noticing the satellite dish and seeing Berry constantly at Hart’s home. The neighbors began watching Hart’s house and even held a meeting on her behalf. Eventually, they contacted the district attorney’s office and got Berry to leave.
However, on December 16, 1985, two weeks after having met Berry, Hart went with Berry to the Southern Legal Clinic, where she executed a notarial act to legally adopt Berry. Later that month, Hart was interdicted and declared legally incompetent to handle her affairs. At trial, Dr. Aaron Friedman, a neurologist, testified that Hart was suffering from Alzeheimer’s disease.
Following the interdiction, a civil action to rescind the adoption was filed on Hart’s behalf. Berry went to court and voluntarily signed a consent judgment rescinding the adoption. Upon leaving the courthouse, Berry was arrested for attempted theft.
ERRORS PATENT:
None.
ASSIGNMENT OF ERROR ONE:
The defendant argues that the lower court erred in denying her motions to quash, in arrest of judgment, and for a new trial. She contends that the crime charged fails to state an offense as a matter of law and that the verdict is defective in that it does not form the basis of a valid judgment. Specifically, the defendant argues she could not be validly charged for the taking of property from an owner (Hart) with the intent to deprive permanently a *1153 non-owner (Hart’s heirs), and that the theft of a “hope” to inherit does not constitute a thing of value as a matter of law.
The bill of information in this case charged the defendant of attempted theft of U.S. currency valued at ONE MILLION and NO/lOO DOLLARS ($1,000,000.00) belonging to Elizabeth Hart with the intent to deprive the legal heirs of Elizabeth Hart permanently of said property. LSA-R.S. 14:67 defines theft as 1) the misappropriation or taking 2) of anything of value 3) which belongs to another 4) either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representation 5) with the intent to deprive the other permanently. Attempted theft adds another element to the offense: specific intent to commit the crime.

Anything of Value:

The theft statute was enacted in the 1942 Criminal Code to combine various stealing crimes and to avoid technical limitation on the subject matter of theft by providing that it would include “anything of value.” The statute sought to cover crimes of larceny, embezzlement, and obtaining by false pretenses. The Reporter’s Comments are instructive regarding the background and purpose of the statute. The legislature specifically directed that the phrase “anything of value” be given the “broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal, public or private.” “It must be construed in the broad popular sense of the phrase, not necessarily as synonomous with the traditional legal term ‘property’ ”. LSA-R.S. 14:2 (Reporter’s Comments).
In State v. Picou, 236 La. 421, 107 So.2d 691 (1958), a lawyer went to the home of a man whose child and grandchildren had been critically injured in an accident only hours earlier. The lawyer showed the man a portion of a document purporting to allow the lawyer to investigate the accident, and obtained the man’s signature. The man did not realize that the document was actually a contract wherein he transferred and delivered to the lawyer a twenty percent (20%) interest in the cause of action owned by him as a result of the accidental injuries to his daughter. The lawyer then filed the contract with the Clerk of Court and Recorder of Mortgages.
The State charged the defendant with the theft of a twenty percent (20%) interest in a right and cause of action at law owned by the man. The information listed a value to the cause of action. However, in answering a bill of particulars later, the State listed the value as unknown. After trial, the defendant filed a motion to quash, and the trial court sustained the motion. The Supreme Court affirmed, finding that two elements of the crime had not been shown: something of value and an intent to deprive permanently. The Court stated:
Under the circumstances revealed by the bill of particulars and annexed documents we are unable to conclude that this defendant, by his alleged fraudulent conduct, took something of value — an essential element, as before shown, in the commission of the crime of theft. The consummated contract was nothing more than an employment agreement — a personal service undertaking — under which the accused would render legal services in the prosecution of Wall’s cause of action. Thereunder, if the services produced favorable results he would be paid a stipulated percentage of the sum recovered (payment to him was entirely conditional, it depending on the happening of an uncertain event); otherwise he would receive nothing.
True, the contract recited that Wall transferred and delivered to the attorney an interest in the cause of action (20% or 33⅛% of whatever sum is collected, the interest conveyed being dependent on whether collection is by compromise or suit). Evidently this recitation was inserted, pursuant to the provisions of LRS 37:218, only for the purpose of protecting the attorney’s contingent fee as against third persons. In any event, however, the fact remains that the transferred interest in Wall’s cause of action had no real value when the contract was executed — it then had, as before shown, *1154 only a potential value. Supporting this observation is the district attorney’s statement, contained in the bill of particulars, that: “The total value of the cause of action as of August 7, 1957 is unknown.” It may be further observed, in this connection, that unquestionably the attorney did not receive something that was salable and transferrable by him on the date of the so-called delivery.
Id., 107 So.2d at 696-697 (emphasis added).
Justice McCaleb concurred, but did not subscribe to the view that an interest in a claim for damages for personal injuries is not a thing of value which may be the object of a theft. Nevertheless, he agreed to reverse the conviction because “it is evident from the answers to the bill of particulars that defendant did not misappropriate or take the 20% (or 33V3%) interest in the damage claim of Wall by fraud; the only thing he thus obtained was the irrevocable right to represent Wall as his attorney on a contingent fee basis. In other words, the alleged object of the theft, i.e., interest in the claim, was not taken; the transfer of this interest was founded on a'valid consideration — professional service to be rendered Wall; the alleged fraud consisted of defendant’s misrepresentation by which he assertedly obtained the employment, which, if true, gives rise only to a civil action for annulment of the contract.” Id., 107 So.2d at 697.
Justice Simon dissented, refusing to subscribe to the view that the district attorney’s answer to a bill of particulars that the value of the cause of action was unknown had the effect of negativing a value of ONE THOUSAND EIGHT HUNDRED SEVENTY FIVE and NO/100 DOLLARS ($1,875.00) set forth in the indictment, as the twenty percent (20%) interest in the cause of action. Id., 107 So.2d at 697-98.
Although Picou has been criticized by one commentator (Parkerson, “Theft-A Cause of Action not a Thing of Value,” 19 La.L.Rev. 872 (1959)), we nevertheless find it to be good precedent. Picou is based on the notion that the interest in the cause of action transferred to the defendant had only a potential value when the contract was entered into, and, since there was nothing of present value involved, the essential element of a thing of value had not been established. While the State argues that in the instant case, the assets the defendant allegedly attempted to steal had a real value, we conclude that there was only a potential value as to the heirs. Mrs. Hart could have and may even yet prepare a will excluding them as heirs. Although the State contends that the crime charged was the attempted theft of the “will” of Mrs. Hart to give the legatees what she wanted them to have, the bill of information fails to so charge the defendant, and as such does not state an offense under our statutory law. Having concluded that this essential element of the crime is lacking, we need not discuss defendant’s other assignments of error.
Accordingly, for the reasons expressed above, the conviction and sentence of defendant are hereby reversed.
REVERSED.